## TOWNSHIP OF HIGHLAND GROVE v. VILLAGE OF .WINNIPEG JUNCTION and Others.[1]

April 24, 1914.

Nos. 18,500—(29).

**Dissolution of village — action to obtain village funds.**

1. The township within which a dissolved incorporated village was located is not, in the absence of a statute so providing, the legal successor of the village, or the owner of any of its property, or the surplus funds remaining in the village treasury after dissolution, and cannot maintain an action therefor.

**Statutory direction.**

2. Section 743, R. L. 1905 (section 1305, G. S. 1913), provides that where a municipal corporation is dissolved the common council thereof shall direct how any surplus fund shall be used, and an improper direction or disposition of such funds cannot be complained of by the township in which the municipality was located.

Action in the district court for Clay county against the village of Winnepeg Junction, and the treasurer and trustees of that village, to restrain defendants from distributing the balance collected from taxes by defendant village and to direct them to pay it over to plaintiff as the legal successor of defendant village. The case was tried before Taylor, J., who made findings and ordered the dismissal of the action. From an order denying plaintiff's motion for a new trial, Nye, J., plaintiff appealed. Affirmed.

*James N. Witherow,* for appellant.
*Christian G. Dosland,* for respondent.

BROWN, C. J.

Winnipeg Junction, some time during the year 1901, was duly incorporated under the general statutes as a village, and thereafter continued to conduct its affairs as such until dissolved as presently

[1] Reported in 146 N. W. 974.

to be stated. The territory included within the village boundaries was comprised of a little over a section of land located wholly within the township of Highland Grove, Clay county. It was a small hamlet with a population of between 150 and 200 inhabitants, a store or two with the usual saloon, and was a junction point on the Northern Pacific Railroad, many of its inhabitants being railroad employees. In 1909 the railroad company changed the line of its road as it then extended through the village to a point a mile or so distant therefrom, and soon thereafter the village became practically depopulated; the inhabitants moving away to other parts of the state, buildings removed or torn down, and all occasion for a municipal government at the place disappeared. In November, 1909, the question of dissolving the corporation was submitted to the remaining citizens and was carried by an affirmative vote of those then within the village. The election was held, and the dissolution brought about, in all respects as required by law, and the dissolution took effect on May 27, 1910, six months from the date of the election. Prior to that date the village council provided for and paid all debts of the village. After which there remained in the village treasury something over $600. The village council, supposedly acting under section 743, R. L. 1905 (section 1305, G. S. 1913), ordered by resolution duly passed that this surplus be returned to the taxpayers of the village who resided therein at the time of dissolution. That statute provides that in such cases the village council "shall designate the manner in which the same (the surplus) shall be used." Thereafter, but before the date of the final dissolution of the village, plaintiff, the township within which the village was located, brought this action to recover the surplus, claiming the disposition of the same as made by the village council was illegal and unauthorized, that the town was in law the successor of the village, and that the money belonged to and was its property. The trial court held that the plaintiff had no title or right to the money and the action was ordered dismissed. Plaintiff appealed from an order denying a new trial.

The only question involved is whether the plaintiff has any right or title to the money. We need not stop to consider the question

whether the action of the village council in directing the return of the money to the taxpayers residing in the village on the date of the dissolution was legal or illegal. Unless plaintiff has some right to a voice in the disposition of the money, or some right to have it turned into its treasury, the suggested question cannot be raised by it, and it therefore is an unimportant issue in this litigation. And, though it is quite probable that the village council could not legally dispose of the money otherwise than for some public purpose, the question not being before us we do not decide it. We are clear that the learned trial court properly disposed of the case in holding that the plaintiff had no interest in the money or right to control its disposition. The legislature, contemplating that a situation of this kind might arise on the dissolution of a municipal corporation, directed that the governing body thereof, in this instance the village council, "shall designate the manner in which * * *" [the surplus funds] "shall be used." The legislature thus committed the matter solely to the village council of the dissolved municipality. Under which authority the council might lawfully have turned the money over to the town in which the village was located, or perhaps to a school district, or to the county poor fund, but no other municipal body is in position to insist upon any such disposition; nor can any other municipality claim the money simply because the retiring council failed to make a proper disposition of the same. The state in an appropriate action might do so, before final dissolution took effect and the officers of the defunct municipality ceased to hold their official positions, or the legislature thereafter, but the town in which the municipality happened to be located has no such right. While the dissolution of the village in the case at bar imposes upon the township the duty of caring for the highways in what was formerly the territory of the village, it is not, in the absence of a statute so providing, the legal successor of the dissolved corporation, or entitled to its funds or property, or liable for its debts.

Order affirmed.